1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

NANCY SUSSMAN, MICHAEL SUSSMAN ESTATE THEREOF BY AND THRU HIS SPECIAL ADMINISTER FOR THE ESTATE,

Plaintiff,

v.

SAN DIEGO POLICE DEPARTMENT, et. al.,

Defendants.

Case No.:  20cv1085-JO-MDD

**ORDER GRANTING DEFENDANTS' MOTIONS TO DISMISS**

Defendants Judge Kenneth So; Judge Gregory Pollack; District Attorney Summer Stephan; Assistant District Attorney Wendy Patrick; City Attorney Mara Elliot; former Deputy City Attorney Ryan Scott; the San Diego Police Department; individually named San Diego Police Department Officers; the California Department of Motor Vehicles; the Certified Board of Registered Nursing; Alfonso and Esperanza Martinez; Joel and Mary Johnson; California Highway Patrol Officer Erick Parra; Allstate Northbrook Indemnity Company; Prime Healthcare Paradise Valley, LLC dba Paradise Valley Hospital; and Dr. Prakash Bhatia filed motions to dismiss Plaintiff's Second Amended Complaint on

1

1　　various grounds, including *res judicata*; judicial, prosecutorial, and state immunity;

2　　improper service of process; and failure to state a claim. Dkts. 73, 76, 78, 80–81, 83–86,

3　　89–90. For the reasons stated below, the Court grants Defendants' motions to dismiss.

## I. BACKGROUND

5　　　　Plaintiff Nancy Sussman's son, Michael Sussman, was convicted in San Diego

6　　Superior Court for a variety of misdemeanors related to a domestic violence incident and

7　　was given a one-year sentence. Shortly after being released from jail, Mr. Sussman died

8　　of a drug overdose. In the instant action, the second of two lawsuits she has filed in the

9　　Southern District of California, Plaintiff brings fourteen claims based in part on a

10　　conspiracy between Judges, attorneys, government organizations, and private parties to

11　　harm her and her son and violate their civil rights during the prosecution and conviction of

12　　Mr. Sussman. *See* Dkt. 70 (the "SAC"). Plaintiff also brings claims based on a series of

13　　apparently unrelated grievances, including allegedly unlawful arrests, confinement to a

14　　psychiatric unit, and revocation of her driver's license and nursing license.

### A. Plaintiff's Prior Federal Court Action

16　　　　On June 6, 2019, Plaintiff sued in the United States District Court for the Southern

17　　District of California, alleging a conspiracy to falsely prosecute and convict Mr. Sussman.

18　　*Nancy Sussman, et al. v. San Diego Police Dept., et al.*, Case No. 19cv1063-DMS-JLB (the

19　　"Prior Action"). In the Prior Action, the purported conspirators included Judge Kenneth

20　　So, the San Diego Police Department (the "SDPD"), the San Diego City Attorney's Office

21　　(the "City Attorney's Office"), City Attorney Mara Elliot, former Deputy City Attorney

22　　Ryan Scott, Lieutenant Jeff Jordon, and Alfonso Martinez, among other defendants. *See*

23　　Prior Action Dkt. 9. On November 4, 2019, the District Court dismissed Plaintiff's Second

24　　Amended Complaint with prejudice. *See* Prior Action Dkt. 110. On September 15, 2020,

25　　the Ninth Circuit affirmed. *See* Prior Action Dkt. 128.

### B. The Instant Action

27　　　　After the dismissal of her Prior Action, Plaintiff filed the instant action on June 15,

28　　2020. The Defendants described below have moved to dismiss the claims against them.

*i. Judicial Defendants*

In the SAC, Plaintiff claims that Defendants Judge Kenneth So and Judge Gregory Pollack (together, the "Judicial Defendants") illegally acted to harm Plaintiff and Mr. Sussman in violation of their civil rights. Plaintiff contends, as she did in the Prior Action, that Judge So unfairly presided over the criminal trial of Mr. Sussman, which resulted in Mr. Sussman's "fake conviction" and death. SAC at 11–13, 17–18. Unrelated to the criminal prosecution of her son, Plaintiff claims Judge Pollack presided over a civil harassment matter during which he wrongfully issued a "forged" restraining order against Plaintiff and in favor of Plaintiff's neighbors. *See Alfonso Martinez v. Nancy Sussman*, Superior Court of California, County of San Diego, Case No. 37-2016-00045136-CU-HRCTL; SAC at 6, 9, 16–17. Based on the above, Plaintiff alleges the following claims against the Judicial Defendants: (1) violations of unspecified rights under § 1983 (Count I); (2) abuse of process (Count II); (3) RICO (Count V); (4) interference with a federal lawsuit (Count VIII); and (5) interference with prospective economic advantages (Count XIV).[1]

*ii. The Prosecutorial Defendants*

Plaintiff also names District Attorney Summer Stephan ("DA Stephan"), Assistant District Attorney Wendy Patrick ("ADA Patrick"), City Attorney Mara Elliot, and former Deputy City Attorney Ryan Scott (together, the "Prosecutorial Defendants"). Plaintiff's allegations against the Prosecutorial Defendants appear to center around the prosecution of Mr. Sussman. Plaintiff alleges that DA Stephan subjected her and her son to unidentified "fake trials" and concealed the SDPD's and DA's conspiracy of regularly conducting fake

---

[1] Because Plaintiff has not assigned a unique number to each Count in her SAC, for the purpose of this opinion, the Counts are referred to sequentially in the order they appear. Additionally, Plaintiff names certain Defendants in the Count headings but alleges no facts with respect to them. For the purposes of its analysis, the Court has only considered Defendants against whom some facts are alleged within each Count as Defendants to that Count.

3

1  trials. SAC at 4. Plaintiff does not further clarify the contours of this alleged conspiracy.
2  Plaintiff also claims that DA Stephan refused to investigate her son's death in 2018. *Id.* at
3  23. According to Plaintiff, ADA Patrick participated in these events, although her role is
4  not specified. *Id.* 4, 12–13, 23. As to City Attorney Elliot and former Deputy City Attorney
5  Scott, Plaintiff claims that they improperly prosecuted Mr. Sussman by "condoning perjury
6  and false evidence" but does not allege further facts in support. *Id.* at 12.

7          Plaintiff also identifies a handful of separate events on which she bases her claims
8  against the Prosecutorial Defendants, each of which appear to have occurred a year or more
9  after the prosecution of Mr. Sussman. Plaintiff alleges DA Stephan arrested Plaintiff in
10  2019, on the false charge of criminally threatening Defendant Alfonso Martinez to
11  improperly influence the outcome of the Prior Action. *Id.* at 14–15. Plaintiff further
12  appears to claim that ADA Patrick participated in this wrong by falsely representing to the
13  state court in the same criminal action that Plaintiff had threatened Alfonso Martinez. *Id.*
14  at 15–16. Other than claiming that she was in fact innocent of having threatened Defendant
15  Martinez, Plaintiff does not plead further detail. In connection with the same matter, ADA
16  Patrick also allegedly "got on Television to discredit Sussman publically as a witness when
17  she was also the prosecutor." *Id.* at 15. Plaintiff does not identify the statements that ADA
18  Patrick made to the press.

19          Plaintiff further claims that Defendant City Attorney Elliot committed abuse of
20  process by "filing a felony restraining order against Sussman using false document
21  provided to her by the District Attorney." *Id.* at 15. Plaintiff does not state any further
22  context or facts in support of this allegation. Plaintiff also alleges that former Deputy City
23  Attorney Scott granted immunity to her neighbor, Defendant Alfonso Martinez "for his
24  perjured statements and a false letter and false pictures." *Id.* at 7. Plaintiff does not provide
25  any additional detail, although this allegation appears to be unrelated to Mr. Sussman's
26  prosecution. Former Deputy City Attorney Scott also allegedly sent defamatory letters to
27  the Certified Board of Registered Nursing, along with Defendants Alfonso and Esperanza
28

4

1   Martinez and Joel and Mary Johnson, reporting "Sussman as 'crazy' mentally Ill' under
2   arrest, in jail etc. Criminal etc, in essence defaming Sussman." *Id.* at 31.

3        Based on the foregoing, Plaintiff alleges violations of unspecified rights under
4   § 1983 and RICO against the Prosecutorial Defendants (Counts I and V); conspiracy to
5   obstruct justice and interference with a federal lawsuit against DA Stephan and ADA
6   Patrick (Count VII–VIII); abuse of process against DA Stephan, ADA Patrick, and City
7   Attorney Elliot (Count II); and defamation and interference with prospective economic
8   advantage against former Deputy City Attorney Scott (Counts XIII–XIV).

9   *iii. The State Agency Defendants*

10       Plaintiff brings claims against two state agencies, the California Department of
11  Motor Vehicles (the "DMV") and the California Board of Registered Nursing (the
12  "CBRN") based on discrete events unrelated to the prosecution of Mr. Sussman. With
13  respect to the DMV, Plaintiff appears to allege that it wrongfully suspended her license on
14  an unidentified date and again in 2020. SAC at 9, 28–29. After the first suspension,
15  Plaintiff "demanded of the DMV the suspension be removed it was not." *Id.* at 28. Then,
16  in 2020, she contends that the DMV knowingly suspended her license based on false police
17  reports, despite her "excellent driving skills." *Id.* at 9, 28–29. Based on the above, Plaintiff
18  brings a claim fashioned as "discrimination . . . excessive fines and wrongful suspensions
19  of Sussman license to drive" (Count XI).[2]

20       Unrelatedly, Plaintiff claims that the CBRN violated its fiduciary duty to her and
21  deprived her of due process when it revoked her nursing license in 2019. *Id.* at 30–33.
22  According to Plaintiff, the CBRN wrongfully inactivated her nursing license even though
23
24
_____

25      [2] The Court liberally construes this *pro se* claim as arising under § 1983, because
26  Plaintiff appears to allege that her license was suspended wrongfully and without due
    process of law. In addition, although the DMV is named in Plaintiff's RICO claim alleging
27  a conspiracy related to the prosecution of Mr. Sussman, Plaintiff does not specifically
28  allege what role the DMV played in any conspiracy.

Plaintiff had satisfied the applicable licensing requirements, and the CBRN failed to inform her of same. *Id.* The CBRN also allegedly wrongfully relied on defamatory complaints about Plaintiff in revoking Plaintiff's license. *Id.* Plaintiff further claims that the CBRN failed to disclose the complaints to Plaintiff or give her a chance to rebut them, and that her nursing license was ultimately revoked "behind [her] back" and without giving Plaintiff an opportunity to contest. *Id.* at 31–32. Based on the foregoing, Plaintiff brings an unspecified claim against the CBRN, which the Court liberally construes as a claim brought under § 1983 (Count XIII).[3]

### iv. The SDPD Defendants

Plaintiff brings claims against the SDPD and certain individually named SDPD Officers (the "SDPD Defendants") as members of an alleged conspiracy to prosecute Mr. Sussman. Plaintiff states that Mr. Sussman's prosecution was "was being done for the police dept." SAC at 12. Plaintiff does not further elaborate on the SDPD Defendants' role in any conspiracy.

Plaintiff also brings claims against the SDPD Defendants based on three arrests unrelated to Mr. Sussman's prosecution. *Id.* at 14–15, 18–19. During Plaintiff's first arrest on August 17, 2019, the SDPD and individually named Officer Tharp allegedly "performed an illegal search of Sussman glove compartment and during that search placed a knife in the glove compartment." *Id.* at 19. During Plaintiff's second arrest on October 28, 2019, the SDPD allegedly used "brutal force" and "used unlawful search and seizure to obtain warrant on Sussman." *Id.* at 14. With respect to Plaintiff's third arrest on December 30, 2019, Plaintiff claims that the SDPD "took Sussman on a wild and reckless police chase in her vehicle based upon a false warrant." *Id.* at 18. During this arrest, Plaintiff states that individually named SDPD Officers Highhorse and Mondello jumped on her and "put

---

[3] Plaintiff appears to claim that her nursing license was revoked wrongfully and without due process of law. Like the DMV, although the CBRN is named in Plaintiff's RICO claim, Plaintiff does not specify the CBRN's alleged role in any conspiracy.

1    Sussman handcuffs on so tight Sussman suffered heart pains," respectively. *Id.* at 18–19.
2    Based on the above, Plaintiff brings the following claims against the SDPD
3    Defendants: (1) violations of unspecified rights under § 1983 (Count I); (2) abuse of
4    process (Count II); (3) unlawful search and seizure, excessive force, and unlawful arrest
5    under § 1983 (Counts III–IV); and (4) RICO (Count V).

6        *v. The Neighbor Defendants*

7        Plaintiff names four of her neighbors as Defendants: Alfonso and Esperanza
8    Martinez and Joel and Mary Johnson.  As in the Prior Action, Plaintiff names Defendant
9    Alfonso Martinez as a member of a conspiracy to wrongfully prosecute and convict
10   Mr. Sussman. SAC at 18.  Unrelated to those claims concerning her son, Plaintiff also
11   alleges that Defendant Alfonso Martinez submitted a false police report in 2019 that
12   Plaintiff threatened him. *Id.* at 7–8, 14–16.  In yet another incident, unspecified persons
13   purportedly "hired" Defendant Alfonso Martinez "to spy on the Sussman with 24/7
14   cameras from his roof and report all activities to them for entrapment purposes . . . and
15   instructed him to video tape the Sussman's and easedrop on them 24/7 and report activities
16   to the SDPD so he could testify against the Sussman's with immunity." *Id.* at 6.  As to
17   Defendant Esperanza Martinez, the spouse of Defendant Alfonso Martinez, Plaintiff states
18   that she "fabricated evidence in a police report and submitted false testimony at a court
19   hearing." *Id.* at 8.  Plaintiff does not specify, however, what evidence was fabricated, what
20   testimony was false, nor the court hearing at which testimony took place.

21       Plaintiff also alleges that the Martinez couple and two other neighbors, Joel and
22   Mary Johnson, sent defamatory complaints to the CBRN that "Sussman as 'crazy' mentally
23   Ill' under arrest, in jail etc. Criminal etc, in essence defaming Sussman," which caused
24   Plaintiff to lose her nursing license. *Id.* at 30–36.

25       Based on the above, Plaintiff brings the following claims against Defendants
26   Alfonso and Esperanza Martinez and Joel and Mary Johnson: RICO (Count V); an
27   unspecified claim that the Court construes as defamation (Count XIII); and interference
28

7

1   with prospective economic advantages (Count XIV).  Plaintiff also brings an abuse of

2   process claim against Defendant Alfonso Martinez (Count II).

3      *vi. Defendant CHP Officer Parra*

4      Plaintiff alleges that Defendant California Highway Patrol ("CHP") Officer Erick

5   Parra falsely arrested Plaintiff in January 2020, failed to mirandize her, and wrongfully

6   reported her to the DMV.  SAC at 28–30.  Although Plaintiff appears to claim that CHP

7   Officer Parra's report resulted in the DMV's suspension of her license in 2020, Plaintiff's

8   claim against CHP Officer Parra is otherwise unrelated to her remaining claims.  Based on

9   these contentions, Plaintiff brings an unspecified claim for false arrest against CHP Officer

10  Parra (Count XII).[4]  Plaintiff also names CHP Officer Parra in her RICO claim, although

11  she alleges no further facts with respect to him and does not identify his role in any

12  conspiracy.

13     *vii. Defendant Allstate*

14     Plaintiff brings a claim against Defendant Allstate Northbrook Indemnity Company

15  ("Allstate") based on an insurance dispute that is unrelated to the rest of her claims.

16  Plaintiff states that she was in a car accident on August 17, 2019, that resulted from the

17  other driver's negligence.  SAC at 25.  Plaintiff alleges that Allstate promised to do an

18  independent investigation into the accident but ultimately failed to do so.  *Id.* at 25–27.

19  Plaintiff concludes that Allstate violated the implied covenant of good faith and fair dealing

20  by failing to perform an adequate investigation, settling with the other driver, filing a SR

21  22 form indicating Plaintiff was at fault, and lying to Plaintiff regarding the fact of the SR

22  22 form and the settlement.  *Id.*  Based on this, Plaintiff brings a claim for violation of the

23

24

25

—————————————————————

26     [4] The Court construes Plaintiff's claim against Officer Parra as arising under state

27  law because Plaintiff explicitly pleads counts under federal law on each of her allegedly

28  unlawful arrests but does not cite to federal law in the claim against Officer Parra.  *See*
    SAC at 28–30.

1    implied covenant of good faith and fair dealing (Count X). Plaintiff also names Allstate in
2    her RICO claim but does not allege Allstate's involvement in any conspiracy.

3        *viii. Defendants Paradise and Dr. Bhatia*

4        Plaintiff brings claims against Prime Healthcare Paradise Valley, LLC dba Paradise
5    Valley Hospital ("Paradise") and Dr. Prakash Bhatia based on her involuntary psychiatric
6    confinement, unrelated to the rest of her claims. SAC at 24–25. Plaintiff does not specify
7    the dates or circumstances of her confinement but appears to suggest that she was
8    wrongfully confined to the psychiatric unit without her consent. Plaintiff claims that
9    Paradise and Dr. Bhatia accepted transfer of Plaintiff to Paradise's psychiatric unit without
10   Plaintiff's consent and that Defendant Dr. Bhatia knew that Plaintiff did not have a mental
11   health condition but refused to release her. *Id.* at 24. Plaintiff purportedly was only
12   allowed to leave the psychiatric hospital after Dr. Bhatia fraudulently "orchestrated a
13   pretend hearing." *Id.* at 24–25. Based on this, Plaintiff brings state law claims of false
14   imprisonment, fraud, and deceit against Paradise and Dr. Bhatia (Count IX).

15                          **II. STANDARD OF REVIEW**

16       A Rule 12(b)(6) motion to dismiss tests the sufficiency of the complaint. *See*
17   *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Rule 12 (b)(6) is read in conjunction with
18   Rule 8(a), which requires only "a short and plain statement of the claim showing that the
19   pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). While Rule 8 does not require detailed
20   factual allegations, at a minimum, a complaint must allege enough facts to provide "fair
21   notice" of both the particular claims being asserted and "the grounds upon which [those
22   claims] rest[]." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 & n.3 (2007) (citations
23   omitted).

24       In deciding a motion to dismiss, all material factual allegations of the complaint are
25   accepted as true, as well as all reasonable inferences to be drawn from them. *Cahill v.*
26   *Liberty Mut. Ins. Co.*, 80 F.3d 336, 338 (9th Cir. 1996). A court, however, need not accept
27   all conclusory allegations as true. Rather it must "examine whether conclusory allegations
28   follow from the description of facts as alleged by the plaintiff." *Holden v. Hagopian*, 978

1    F.2d 115, 1121 (9th Cir. 1992).  A motion to dismiss should be granted if a plaintiff's
2    complaint fails to contain "enough facts to state a claim to relief that is plausible on its
3    face." *Twombly*, 550 U.S. at 570.  "A claim has facial plausibility when the plaintiff pleads
4    factual content that allows the court to draw the reasonable inference that the defendant is
5    liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at
6    556).

7        *Pro se* complaints are "held to less stringent standards than formal pleadings drafted
8    by lawyers." *Hebbe v. Pliler*, 627 F.3d 338, 342 (9th Cir. 2010) (citation omitted).  A *pro
9    se* plaintiff's complaint must be construed liberally to determine whether a claim has been
10   stated.  *See Zichko v. Idaho*, 247 F.3d 1015, 1020 (9th Cir. 2001).  However, a *pro se*
11   litigant's pleadings still must meet some minimum threshold in providing the defendants
12   with notice of what it is that they allegedly did wrong. *See Brazil v. U.S. Dep't of Navy*,
13   66 F.3d 193, 199 (9th Cir. 1995).

## III. DISCUSSION

### A. Judges, Prosecutors, and State Agencies are Immune from Suit

16       The Judicial Defendants, the Prosecutorial Defendants, the DMV, and the CBRN
17   each seek to dismiss Plaintiff's claims against them on grounds of judicial immunity,
18   prosecutorial immunity, and state immunity, respectively.  For the reasons set forth below,
19   the Court finds that the Judicial Defendants, the Prosecutorial Defendants, the DMV and
20   the CBRN are immune from suit, and the claims against them are dismissed.

21   *i. Judicial Defendants*

22       Plaintiff's claims for violations of unspecified rights under § 1983, abuse of process,
23   RICO, interference with a federal lawsuit, and interference with prospective economic
24   advantages against Judge So and Judge Pollack are barred by judicial and Eleventh
25   Amendment immunity.  Judges are "immune from damage actions for judicial acts taken
26   within the jurisdiction of their courts." *Ashelman v. Pope*, 793 F.2d 1072, 1075 (9th Cir.
27   1986).  Judicial immunity "applies 'however erroneous the act may have been, and
28   however injurious in its consequences it may have proved to plaintiff." *Id.* (quoting

1   *Cleavinger v. Saxner*, 474 U.S. 193, 199 (1985)); *Butler v. Gammick*, 173 F.3d 859 (9th

2   Cir. 1999) (noting judicial immunity bars claims that judge conspired with others to render

3   an adverse ruling). "The factors relevant in determining whether an act is judicial relate to

4   the nature of the act itself, i.e., whether it is a function normally performed by a judge, and

5   to the expectations of the parties, i.e., whether they dealt with the judge in his judicial

6   capacity." *Ashelman*, 793 F.2d at 1075–76 (citation and internal quotation marks omitted).

7   State judges are further insulated from suit by the Eleventh Amendment. *Lund v. Cowan*,

8   5 F.4th 964, 969 (9th Cir. 2021), *cert. denied*, 142 S. Ct. 900 (2022).

9          Accordingly, the Court examines whether the Judicial Defendants performed the

10   acts stated in the SAC in their judicial capacity to determine whether Plaintiff's claims are

11   barred by judicial and Eleventh Amendment immunity. Here, the SAC alleges acts that

12   are judicial in nature because each—presiding over Mr. Sussman's trial, issuing a

13   restraining order, and issuing court documents—are functions typically performed by a

14   judge and, according to Plaintiff, were done in connection with criminal and civil

15   proceedings over which the Judicial Defendants had jurisdiction. SAC at 6, 9, 11–13, 16–

16   18. Plaintiff, who used to be an attorney, also appears to contend that Judge Pollack

17   retaliated against her when he reported her conduct to the State Bar of California. This act

18   is also judicial in nature because reporting unethical attorney conduct is well within the

19   typical acts of a judge. *Id.* at 23; California Code of Judicial Ethics, Canon 3(D)(2).

20   Because all the Judicial Defendants' acts are judicial in nature, Plaintiff's claims against

21   the Judicial Defendants are barred by both judicial immunity and Eleventh Amendment

22   immunity.[5]

23   //

24   //

25

26

_____

27          [5] The Court rejects Plaintiff's conclusory statement in the SAC that Judge Pollack is

28   sued in his individual capacity because the Court finds that the alleged conduct falls
    squarely within Judge Pollack's judicial role. *See* SAC at 6.

1  *ii. Prosecutorial Defendants*

2    Plaintiff's claims against Defendants DA Stephan, ADA Patrick, City Attorney

3  Elliot, and former Deputy City Attorney Scott are barred by the doctrine of prosecutorial

4  immunity. Prosecutorial immunity shields prosecutors from civil damages suits premised

5  upon acts committed within the scope of their official duties which are "intimately

6  associated with the judicial phase of the criminal process." *Imbler v. Pachtman*, 424 U.S.

7  409, 430 (1976); *see also Buckley v. Fitzsimmons*, 509 U.S. 259, 272–73 (1993); *Burns v.*

8  *Reed*, 500 U.S. 478, 487–93 (1991). A prosecutor is immune even when the prosecutor's

9  malicious or dishonest action deprived defendant of his or her liberty. *Ashelman*, 793 F.2d

10  at 1075. Prosecutorial immunity applies wherever a prosecutor "acts as an advocate in

11  initiating a prosecution and in presenting the state's case." *Id.* at 1076 (citation and

12  quotations omitted).

13    Nearly all of Plaintiff's allegations concerning the Prosecutorial Defendants involve

14  prosecutorial acts closely tied to the initiation and presentation of state prosecutions. With

15  respect to DA Stephan, Plaintiff claims she failed to investigate Mr. Sussman's death,

16  initiated criminal proceedings for an improper purpose, conducted "fake" trials, and

17  participated in the District Attorney's illegal policies. SAC at 4, 12–15, 23. ADA Patrick

18  likewise allegedly initiated criminal proceedings for an improper purpose, and

19  misrepresented facts to the court. *Id.* at 12–16. As to City Attorney Elliot, she allegedly

20  filed a felony restraining order against Plaintiff. *Id.* at 15. Finally, with respect to former

21  Deputy City Attorney Scott, Plaintiff primarily contends that he granted a witness

22  immunity, and that the witness ultimately committed perjury. *Id.* at 7. Each of these acts

23  involves Defendants DA Stephan, ADA Patrick, Elliot, and Scott initiating prosecutions

24  and presenting the state's case in court. Therefore, these acts cannot form a basis for

25  liability.

26    Plaintiff's only allegations against the Prosecutorial Defendants not covered by

27  prosecutorial immunity is that ADA Patrick made statements to the press. In *Buckley v.*

28  *Fitzsimmons*, the Supreme Court held that a prosecutor's statements to the press are not

1    protected by prosecutorial immunity because prosecutors do not make press statements as

2    advocates for the state. 509 U.S. at 277–78. Here, while it is unclear whether Plaintiff is

3    seeking relief under § 1983 or state tort law, under either, Plaintiff does not plead sufficient

4    facts with the requisite plausibility to survive a motion to dismiss. To the extent Plaintiff's

5    allegations are brought under § 1983, no constitutional violation has been alleged. *West v.*

6    *Atkins,* 487 U.S. 42, 48 (1988) ("To state a claim under § 1983, a plaintiff must allege the

7    violation of a right secured by the Constitution").[6] To the extent Plaintiff's claim arises

8    under state tort law, Plaintiff has not pleaded compliance with the California Tort Claims

9    Act. Cal. Gov. Code §§ 911.2, 945.4; *Mangold v. California Pub. Utilities Comm'n*, 67

10   F.3d 1470, 1477 (9th Cir. 1995) (noting that the CTCA requires "timely presentation of a

11   written claim and [] rejection" and a "plaintiff must allege compliance or circumstances

12   excusing compliance"). Plaintiff further fails to identify what ADA Patrick said to the

13   press or how her statements harmed Plaintiff. Accordingly, Plaintiff's claim against ADA

14   Patrick based on her statements to the press is dismissed.

15   *iii. State Agency Defendants*

16   Because the CBRN and the DMV are California state agencies, Plaintiff's § 1983

17   claims in Counts XI and XIII are barred by the Eleventh Amendment. *Dittman v.*

18   *California*, 191 F.3d 1020, 1025–26 (9th Cir. 1999); *Sabatini v. California Bd. of*

19   *Registered Nursing*, 2019 WL 1082445, at *2 (S.D. Cal. Mar. 7, 2019); Cal. Bus. & Prof.

20   Code § 2701; Cal. Vehicle Code § 1500. The Eleventh Amendment prohibits suits by

21   private parties against a state or state agency unless one of three exceptions applies: (1) the

22   state has expressly waived its right not to be sued, (2) Congress has specifically passed a

23   law allowing suit, or (3) a party seeks prospective injunctive relief for an ongoing violation

24   of federal law under the *Ex Parte Young* doctrine. *In re Lazar*, 237 F.3d 967, 976 (9th Cir.

25

26

27       [6] Plaintiff suggests that ADA Patrick's actions deprived Plaintiff of her right to
     appeal the Prior Action, but Plaintiff successfully filed an appeal. *See* Prior Action Dkt.
28   128.

1  2001) (recognizing consent and abrogation as exceptions to Eleventh Amendment
2  immunity); *Yakama Indian Nation v. State of Wash. Dep't of Revenue*, 176 F.3d 1241, 1245
3  (9th Cir. 1999) (state's consent must be unequivocal and express); *Doe v. Regents of the*
4  *Univ. of California*, 891 F.3d 1147, 1153 (9th Cir. 2018) (holding the *Ex Parte Young*
5  doctrine allows for prospective injunctive relief against state officials named in their
6  official capacity). As to the third exception, the *Ex Parte Young* doctrine only applies when
7  a private party seeks injunctive relief against a state official in her official capacity for an
8  ongoing violation of federal law. *Doe v. Lawrence Livermore Nat. Lab'y*, 131 F.3d 836,
9  839 (9th Cir. 1997). Claims brought under state law, for non-injunctive relief, or for
10 retrospective relief are not permitted. *See id.*

11      None of the exceptions to Eleventh Amendment immunity saves Plaintiff's claims
12 against the CBRN and the DMV; the claims therefore must be dismissed. Here, Plaintiff
13 does not allege either the CBRN or the DMV has consented to suit. In fact, both agencies
14 have specifically denied consenting to suit in moving to dismiss the SAC. Dkt. 73 at 9–10
15 (denying consent); Dkt. 76 at 9 (same). Moreover, Congress has not specifically allowed
16 suits against states or their agencies under § 1983. *Dittman*, 91 F.3d at 1025–26. Finally,
17 the *Ex Parte Young* doctrine does not apply because Plaintiff's claim against the CBRN,
18 requesting her reinstatement, is alleged against the agency, not individuals in their official
19 capacity. Moreover, her claim against the DMV does not seek prospective injunctive relief.
20 Accordingly, Plaintiff's Counts XI and XIII against the CBRN and the DMV are dismissed.
21 **B. Plaintiff's Claims Arising Out of the Trial, Conviction, and Death of Michael**
22    **Sussman are Barred by Res Judicata**

23      Plaintiff's Counts I and V appear to allege that Defendants conspired to and did in
24 fact harm Plaintiff and Mr. Sussman by prosecuting and convicting Mr. Sussman, and
25 ultimately causing his death. Because these allegations were litigated in the Prior Action,
26 Counts I and V are barred by *res judicata*.

27      *Res judicata*, also known as claim preclusion, precludes parties from relitigating
28 issues that were or could have been raised in a prior action, and can serve as the basis for

1  granting a motion to dismiss. *See Federated Dep't Stores, Inc. v. Moitie*, 452 U.S. 394,

2  398 (1981); *see also Stewart v. U.S. Bancorp*, 297 F.3d 953, 956 (9th Cir. 2002). *Res*

3  *judicata* is applicable whenever there is (1) an identity of claims, (2) a final judgment on

4  the merits, and (3) identity of the parties. *Tahoe-Sierra Pres. Council, Inc. v. Tahoe Reg'l*

5  *Planning Agency*, 322 F.3d 1064, 1077 (9th Cir. 2003).

6  *i. There is an Identity of Claims*

7      In determining whether *res judicata* bars Plaintiff's current claims regarding her

8  son's trial and death, the Court first examines whether they are essentially the same as those

9  in the Prior Action.  Identity of claims exists "when two suits arise from 'the same

10  transactional nucleus of facts.'" *Tahoe-Sierra*, 322 F.3d at 1078 (citation omitted). Even

11  "[n]ewly articulated claims based on the same nucleus of facts may still be subject to a *res*

12  *judicata* finding if the claims could have been brought in the earlier action." *Id.*  Although

13  the specifics of Plaintiff's allegations in both actions are difficult to discern, it is clear that

14  Plaintiff's Prior Action arose out of the trial, conviction, and death of Mr. Sussman.  Prior

15  Action Dkt. 110 at 2.   There, Plaintiff alleged a conspiracy to wrongfully convict

16  Mr. Sussman, and ultimately cause his death. *See id.*  Here, Plaintiff's claims likewise

17  appear to arise out of the same transactional nucleus of facts, *i.e.*, the trial, conviction, and

18  death of Mr. Sussman.  For instance, in both actions, Plaintiff challenged Judge So's and

19  Defendant Scott's conduct at Mr. Sussman's trial and alleged that Defendant Elliot and the

20  SDPD helped ensure that Mr. Sussman was convicted.  As such, the Court finds an identity

21  of claims between the two actions, and the first element is met.

22  *ii. There is a Final Judgment on the Merits*

23      The second element of *res judicata* is met because Plaintiff's Prior Action was

24  resolved on the merits.  A dismissal with prejudice constitutes a "final judgment on the

25  merits" for *res judicata* purposes. *Leon v. IDX Systems Corp.*, 464 F.3d 951, 962 (9th Cir.

26  2006); *see also Beard v. Sheet Metal Workers Union, Local 150*, 908 F.2d 474, 477 n.3

27  (9th Cir. 1990) ("Federal law dictates that a dismissal with prejudice bars a later suit under

28  res judicata.").  Plaintiff's Prior Action seeking redress for the death of her son was

1   dismissed with prejudice and affirmed on appeal, satisfying the second element. *See* Prior

2   Action Dkts. 110, 128.

3   *iii. The Relevant Parties Are Identical*

4   Finally, the third element of *res judicata* is met with regard to Defendants the SDPD,

5   City Attorney Elliot, former Deputy City Attorney Scott, Alfonso Martinez, and Judge So,

6   because they were also defendants to the conspiracy claims surrounding Plaintiff's son in

7   the Prior Action. In both actions, Nancy Sussman is the Plaintiff and the SDPD, the San

8   Diego City Attorney's Office, Mara Elliot, Ryan Scott, Alfonso Martinez, and Judge So

9   are Defendants. Thus, the third element of *res judicata* is clearly met as to Counts I and V

10  against these Defendants. (In the instant action, Plaintiff names additional Defendants to

11  these conspiracy counts. This order dismisses those Defendants on other grounds set forth

12  in sections II.A and II.C–D.)

13  Because all the elements for *res judicata* are met, Plaintiff's Count I and Count V

14  are dismissed as to the aforementioned Defendants.

15  **C. Plaintiff's RICO Claim Does Not State a Claim for Relief**

16  Plaintiff's Count V is a RICO claim against all Defendants for causing the death of

17  Mr. Sussman. In addition to being barred by *res judicata* as discussed above, Plaintiff's

18  RICO claim fails under Rules 8 and 12(b)(6). To state a claim for a RICO violation, a

19  plaintiff must allege: "(1) conduct (2) of an enterprise (3) through a pattern (4) of

20  racketeering activity." *Sedima, S.P.R.L. v. Imrex Co., Inc.*, 473 U.S. 479, 496 (1985). An

21  "enterprise" includes "any individual, partnership, corporation, association, or other legal

22  entity, and any union or group of individuals associated in fact although not a legal entity."

23  18 U.S.C. § 1961(4). "Racketeering activity" is any act indictable under the several

24  provisions of Title 18 of the United States Code. *Id.* § 1961(1). A "pattern of racketeering

25  activity" requires at least two predicate acts. *Clark v. Time Warner Cable*, 523 F.3d 1110,

26  1116 (9th Cir. 2008). To establish a RICO injury, the plaintiff must show "harm to a

27  specific business or property interest and if the alleged business or property interest is

28

1    cognizable under state law." *Newcal Indus., Inc. v. Ikon Office Solution*, 513 F.3d 1038,
2    1055 (9th Cir. 2008) (citation omitted).

3        Plaintiff's civil RICO claim against all Defendants does not appear to plead any of
4    the required elements.  Plaintiff claims that Defendants committed multiple illegal acts
5    over the past ten years, ranging from "Satanic Jury trials" to "causing the death of Michael
6    Sussman."  The following is the entirety of Plaintiff's RICO allegations:

> All the defendants named herein engaged in multiple acts of corruption,
> Obstruction of Justice, murders, mail fraud, obstruction of justice, violation
> of 18 USC Sec 4.  Aggressive, Public Corruption, and repeated brutality by
> the Police Dept.  Fake and Satanic Jury trials, Conspiracy to take property
> rights away from Nancy Sussman and causing the death of Michael
> Sussman . . . Defendants have engaged in said criminal conduct for at least
> the last ten years Nancy Sussman asked for prosecution for murder of
> Michael . . . All defendants named took part in deprivation of constitutional
> rights and fraud and all are responsible for Rico violations named and for the
> covert murder of Michael Sussman age 24 and conspiracy to obstruction of
> justice, theft as described herein, false imprisonment, tampering with
> evidence, mail fraud.  Public corruption which resulted in death.  The actions
> of the named defendants are equivalent to the actions of the
> Mafia . . . Tampering with evidence also.  Plaintiff seeks damages according
> to proof, per civil Rico statute and hopefully a criminal indictment as
> well . . . Defendants So and Pollack retalaiated againsta witness to deny their
> civil rights.  SAC at 20.

19        As seen above, Plaintiff does not properly allege the existence of an enterprise or
20    predicate acts and does not identify cognizable relief.  For one, Plaintiff does not plead the
21    existence of an enterprise, the nature of the alleged enterprise, or Defendants' purported
22    roles in the enterprise.  *Eclectic Properties E., LLC v. Marcus & Millichap Co.*, 751 F.3d
23    990, 997 (9th Cir. 2014) ("To show the existence of an enterprise under the second element,
24    plaintiffs must plead that the enterprise has (A) a common purpose, (B) a structure or
25    organization, and (C) longevity necessary to accomplish the purpose.").

26        Nor does Plaintiff identify any predicate acts, let alone a pattern of racketeering
27    activity.  *Yagman v. Garcetti*, 852 F.3d 859, 867 (9th Cir. 2017) (holding that unspecified
28    civil rights violations and conclusory references to mail fraud do not constitute predicate

1  acts).  Finally, as was the case in the Prior Action, deprivation of constitutional rights and
2  false imprisonment are not cognizable injuries under RICO.  *Diaz v. Gates*, 420 F.3d 897,
3  899–900 (9th Cir. 2005) (holding that plaintiff cannot recover under RICO based upon
4  allegations of false imprisonment); *Lauter v. Anoufrieva*, 642 F. Supp. 1060, 1085–86
5  (C.D. Cal. 2009) (holding that deprivation of constitutional rights is not compensable under
6  RICO).  For these reasons, Plaintiff's RICO claim is dismissed.

7  **D. Plaintiff's Remaining Federal Claims Based On Her Arrests Are Dismissed**

8        The SDPD Defendants seek dismissal of Plaintiff's claims for violations of civil
9  rights under § 1983, abuse of process, and RICO under Counts I–V on the grounds that the
10 SDPD is not a proper Defendant, and the individually named SDPD Officers have not been
11 properly served.  For the reasons stated below, Plaintiff's claims against the SDPD
12 Defendants are dismissed.

13       First, Plaintiff may not sue the SDPD under § 1983 absent allegations of a policy or
14 custom because the SDPD is a municipality, not a "person" as required by the statute.  42
15 U.S.C. § 1983; *United States v. Kama*, 394 F.3d 1236, 1239–40 (9th Cir. 2005) (Ferguson,
16 J., concurring) ("[M]unicipal police departments and bureaus are generally not considered
17 'persons' within the meaning of section 1983"); *Rodriguez v. Cnty. of Contra Costa*, 2013
18 WL 5946112 at *3 (N.D. Cal. Nov. 5, 2013) (noting that outside of the *Monell* exception,
19 "sub-departments or bureaus of municipalities, such as the police departments, are not
20 generally considered 'persons' within the meaning of § 1983.").  Plaintiff does not argue,
21 nor can she, that the SDPD is not a municipality.  Nor can Plaintiff argue that the SDPD is
22 a proper Defendant based on Plaintiff's factual allegations concerning discrete arrests and
23 the SDPD's alleged involvement in her son's conviction and trial.  Therefore, Plaintiff
24 cannot pursue her § 1983 claims against the SDPD and her claims against it are dismissed.

25       Second, Plaintiff's claims against various SDPD Officers fail for insufficient service
26 of process.  "A federal court is without personal jurisdiction over a defendant unless the
27 defendant has been served in accordance with Fed. R. Civ. P. 4." *Lawrence v. Krahne*, 698
28 F. App'x 504, 504 (9th Cir. 2017) (citation omitted).  To properly serve the Defendants,

1  Plaintiff needed to comply with Fed. R. Civ. P. 4(e) and a file a separate proof of service
2  as to each Defendant to demonstrate compliance. Fed. R. Civ. P. 4(e) (provides that service
3  can be effected by (1) personal delivery, (2) delivery at dwelling to someone of suitable
4  age and discretion residing there, (3) delivery to authorized agent, or (4) by compliance
5  with applicable state laws. California state law specifies that a summons can be served by
6  personal delivery, substitute service following reasonable diligence, service by mail with
7  notice and acknowledgement of receipt, or by publication. Cal. Code Civ. Proc.
8  §§ 415.10–50. "Once service is challenged, plaintiff[] bear[s] the burden of establishing
9  that service was valid under Rule 4." *Brockmeyer v. May*, 383 F.3d 798, 801 (9th Cir.
10  2004).

11      The Court agrees with Defendants that Plaintiff "did not properly serve the
12  individually named Defendants under California law or Federal law." Dkt. 86-1 at 16.
13  Plaintiff apparently served the SDPD Officers—including City Attorney Jeff Jordon,
14  erroneously sued as Officer Jordan of the SDPD—by leaving copies at the SDPD with an
15  Officer "McAndrew." *See* Dkts. 8, 12–18, 21–22. This method of substitute service does
16  not comply with Rule 4 because there is no evidence that Plaintiff made prior reasonable
17  efforts to personally serve the Defendants, generally defined as two to three attempts,
18  pursuant to Cal. Code Civ. Proc. § 415.20. *Jes Solar Co. Ltd. v. Tong Soo Chung*, 725 F.
19  App'x 467, 469–70 (9th Cir.), *amended on denial of reh'g*, 716 F. App'x 635 (9th Cir.
20  2018) (finding insufficient service where plaintiff did not argue prior attempts were made
21  and there was no evidence in the record of same); *Avalos v. MMDEOL Inc.*, 2021 WL
22  540380, at *4 (E.D. Cal. Jan. 12, 2021) (collecting cases). Plaintiff does not argue on
23  opposition that she made reasonable attempts to serve the SDPD Officers, and there are no
24  proofs of service or other evidence in the record that suggest that attempts were made.
25  Thus, the Court does not have personal jurisdiction over the SDPD Officers, and the claims
26  against them are dismissed.
27  //
28  //

1    **E. The Court Declines To Exercise Supplemental Jurisdiction Over Plaintiff's**
2    **   Remaining State Law Claims**

3    With the dismissals set forth above, the only remaining claims are state law claims
4    for suspected murder (Count VI); false imprisonment (Count IX); violation of the implied
5    covenant of good faith and fair dealing (Count X); false arrest (Count XI); defamation
6    (Count XIII); and interference with prospective economic advantages (Count XIV).
7    Plaintiff's remaining state law claims are dismissed for lack of supplemental jurisdiction.
8    The Court has "supplemental jurisdiction over all other claims that are so related to claims
9    in the action within such original jurisdiction that they form part of the same case or
10    controversy." 28 U.S.C. § 1367(a). In determining whether to exercise supplemental
11    jurisdiction, the Court examines whether the federal and state law claims "derive from a
12    common nucleus of operative fact[s] . . . such that [a plaintiff] would ordinarily be
13    expected to try them all in one judicial proceeding." *United Mine Workers of Am. v. Gibbs*,
14    383 U.S. 715, 725 (1966). Even where supplemental jurisdiction exists, the Court may
15    decline to exercise supplemental jurisdiction if "(1) the claim raises a novel or complex
16    issue of state law; (2) the claim substantially predominates over the claim or claims over
17    which the district court has original jurisdiction; (3) the district court has dismissed all
18    claims over which it has original jurisdiction; or (4) in exceptional circumstances, there are
19    other compelling reasons for declining jurisdiction." 28 U.S.C. § 1367(c); *Mendoza v.*
20    *Zirkle Fruit Co.*, 301 F.3d 1163, 1174 (9th Cir. 2002). In deciding whether to exercise
21    supplemental jurisdiction, the court should consider the interests of judicial economy,
22    convenience, fairness, and comity. *City of Chicago v. Int'l College of Surgeons*, 522 U.S.
23    156, 172–73 (1997); *Smith v. Lenches*, 263 F.3d 972, 977 (9th Cir. 2001).

24    The Court finds it doubtful that supplemental jurisdiction ever existed over
25    Plaintiff's state law claims for false imprisonment, violation of the implied covenant of
26    good faith and fair dealing, false arrest, defamation, and interference with prospective
27    economic advantages against Defendants Paradise, Dr. Bhatia, Allstate, CHP Officer Parra,

28

20cv1085-JO-MDD

1    Joel and Mary Johnson, and Alfonso and Esperanza Martinez.[7]  Plaintiff's only federal
2    claim against all of these Defendants is her RICO claim.  The basis of Plaintiff's RICO
3    claim is that Defendants "caus[ed] the death of Michael Sussman," perpetrated "the covert
4    murder of Michael Sussman," and committed "[p]ublic corruption which resulted in
5    death."  SAC at 20; *see also* Section III.B *supra*.  In contrast, Plaintiff's state law claims
6    are based on an array of discrete events, including (1) Allstate's alleged bad faith settlement
7    of a car accident, (2) Paradise's and Dr. Bhatia's alleged confinement of Plaintiff to a
8    psychiatric award, (3) Joel and Mary Johnson's and Alfonso and Esperanza Martinez's
9    alleged interference with Plaintiff's nursing license, and (4) CHP Officer Parra's false
10   arrest of Plaintiff.  These events are wholly unrelated to the facts underlying the RICO
11   claim, and thus, even reading Plaintiff's SAC liberally, there is no common nucleus of
12   operative facts permitting supplemental jurisdiction.

13          Even if the Court were to find that supplemental jurisdiction over the remaining state
14   law claims once existed under 28 U.S.C. § 1367(a), the Court would decline to exercise
15   supplemental jurisdiction under 28 U.S.C. § 1367(c).  Because the Court has dismissed all
16   of Plaintiff's federal claims—the claims that conferred original jurisdiction—the Court
17   need not exercise supplemental jurisdiction over the remaining unrelated state law claims.
18   *See* Section III.A–B *supra*; 28 U.S.C. § 1367(c); *Sanford v. MemberWorks, Inc.*, 625 F.3d
19   550, 561 (9th Cir. 2010) ("[I]n the usual case in which all federal-law claims are eliminated
20   before trial, the balance of factors to be considered under the pendent jurisdiction
21   doctrine—judicial economy, convenience, fairness, and comity—will point toward
22   declining to exercise jurisdiction over the remaining state-law claims.") (quoting
23   *Carnegie–Mellon Univ. v. Cohill*, 484 U.S. 343, 350 n.7 (1988), s*uperseded on other*

---

27          [7] Plaintiff also brings a claim against Anders Holthaus for "suspected murder,"
28   (Count VI), which is dismissed for lack of supplemental jurisdiction along with the other
     state law claims.

1  *grounds by statute as recognized in Fent v. Okla. Water Res. Bd.*, 235 F.3d 553, 557 (10th
2  Cir. 2000)).  Thus, Plaintiff's remaining claims are dismissed.

3  **F. Dismissal With Prejudice**

4  　　The Court finds that certain of Plaintiff's claims must be dismissed with prejudice.
5  Dismissal with prejudice is warranted where amendment would be futile because flaws in
6  the claims cannot be cured.  *Chaset v. Fleer/Skybox Int'l, LP*, 300 F.3d 1083, 1088 (9th
7  Cir. 2002) (finding leave to amend futile where "plaintiffs cannot cure the basic flaw in
8  their pleading"); *Lipton v. Pathogenesis Corp.*, 284 F.3d 1027, 1039 (9th Cir. 2002) (same;
9  noting that where flaws cannot be cured, there is "no need to prolong the litigation by
10  permitting further amendment").  When claims are barred by immunity or by *res judicata*,
11  amendment is plainly futile.  *Riggs v. Jud. Conf. of U.S.*, 137 F. App'x 72 (9th Cir. 2005)
12  (affirming dismissal with prejudice on *res judicata* grounds); *Strand v. Gov't of U.S.*, 846
13  F.2d 1383, at *2 (9th Cir. 1988) (affirming dismissal with prejudice on immunity grounds);
14  *see also Golden v. Hubbell Inc.*, 343 F. App'x 226, 227–28 (9th Cir. 2009) (affirming
15  dismissal with prejudice of improperly named defendant).

16  　　Plaintiff's claims against the Judicial Defendants, the Prosecutorial Defendants, and
17  the SDPD must be dismissed with prejudice because amendment would be futile.  First,
18  Plaintiff's claims against the Judicial Defendants are absolutely barred by judicial
19  immunity, and thus Plaintiff cannot cure her claims as to them.  Similarly, except for
20  Plaintiff's claim against ADA Patrick based on her statements to the press, Plaintiff cannot
21  cure her claims against the Prosecutorial Defendants because they are absolutely barred by
22  prosecutorial immunity.  Lastly, the SDPD is an improperly named Defendant and
23  Plaintiff's § 1983 claims against it cannot be cured by any restatement of the facts.
24  Therefore, except for Plaintiff's foregoing claim against ADA Patrick, the Judicial
25  Defendants, the Prosecutorial Defendants, and the SDPD are dismissed with prejudice.

26  　　Moreover, as discussed above, Plaintiff's Count I and V based on the conspiracy
27  against her son are barred by *res judicata*, making amendment futile, and thus Counts I and
28  V are dismissed with prejudice.  Any attempt by Plaintiff to replead these claims based on

the same transactional nucleus of facts—the prosecution, conviction, and death of Mr. Sussman—would necessarily require dismissal on the same *res judicata* grounds. Amendment would therefore be futile and only prolong the litigation. Accordingly, Counts I and V are dismissed with prejudice.

Plaintiff's remaining claims are dismissed without prejudice because amendment would not be clearly futile at this juncture. Nevertheless, Plaintiff is on notice that the SAC does not provide a short and plain statement of claims or state a claim as required by Rules 8 and 12(b)(6). Plaintiff has 45 days from the date of this order to file an amended complaint on the claims dismissed without prejudice.

## IV. CONCLUSION AND ORDER

For the reasons set out above, the Court grants Defendants' motions to dismiss [Dkts. 73, 76, 78, 80–81, 83–86, 89–90].


**IT IS SO ORDERED**.


Dated: 3/29/22

Hon. Jinsook Ohta
United States District Judge

23